**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JAX SOCCER HOLDINGS, LLC**

  **Plaintiff,**

v.              **Case No.**

             **JURY TRIAL DEMANDED**

**FULL SAIL, LLC**

  **Defendant.**

_____/

## COMPLAINT

  Plaintiff, JAX SOCCER HOLDINGS, LLC, (hereinafter "Plaintiff" or "JAX SOCCER"), by and through its undersigned attorneys hereby file this Complaint for trademark infringement and unfair competition against Defendant, FULL SAIL, LLC (hereinafter "Defendant" or "FULL SAIL") and alleges the following as grounds:

### NATURE OF THE ACTION

  1.  This is an action for infringement of Plaintiff's marks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of common law trademark infringement under Florida law, all arising from the Defendant's unauthorized use of the marks FULL SAIL ARMADA and ARMADA in connection with promoting, advertising, organizing, and managing electronic sporting events, competitions and exhibitions.

  2.  Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

3.      As this action relates to trademark infringement and unfair competition, this Court has original subject matter jurisdiction under 15 U.S.C. §1121(a), 28 U.S.C. §1331 and under 28 U.S.C. §1338(a). This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. §1367(a).

4.      This Court has personal jurisdiction over Defendant pursuant to Florida Statute §48.193(1)(a)(1) because Defendant is operating, conducting, engaging in, or carrying on a business or business venture in this state by selling its services to customers located in this state; pursuant to §48.193(1)(a)(2) because Defendant committed the tortious act of trademark infringement in this state; and pursuant to Florida Statute §48.193(b)(2) because Defendant is engaged in substantial and not isolated activity within this state by marketing and selling its services to customers in this state.

## VENUE

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district due to the fact that the tortious act occurred here, Defendants provide their services here, and Plaintiff was harmed here by Defendants tortious activities.

## PARTIES

6.      Plaintiff is a limited liability company formed under the laws of the state of Delaware and does business throughout the United States, including Jacksonville, Florida and Orlando, Florida.

7.      Upon information and belief, Defendant is a limited liability company that is incorporated in the state of Florida and has its principal place of business at 3300 University Boulevard, Winter Park, Florida 32792.

## TRADEMARKS-IN-SUIT

8.      Plaintiff is the owner by assignment of the entire right, title, and interest, including the right to sue for past infringement, of United States Trademark Registration No. 4,745,243 on the Principal Register, as of May 26, 2015, for the mark JACKSONVILLE ARMADA for "organizing sporting events, namely soccer matches, competition, and exhibitions; entertainment services namely participation in professional soccer games and exhibitions; production of videos featuring soccer matches, competitions, and exhibitions; providing a website featuring non-downloadable videos featuring soccer matches, competitions and exhibitions from the internet; providing a website featuring information about soccer and soccer matches, competitions, and exhibitions; conducting soccer training camps and clinics; ticket reservation and booking services for entertainment, sporting and cultural events; entertainment services, namely personal appearances by players involved with soccer games and league competition." Said registration is based on an application filed in the PTO on February 17, 2014 and claims a date of first use in commerce on February 07, 2015. Thus, the dates of registration, first use in commerce, and application of Plaintiff's mark are all prior to Defendant's filing date and alleged first use date of its FULL SAIL ARMADA and ARMADA marks. A true and accurate copy of the registration is attached hereto as Exhibit "1" and incorporated by reference.

9.      Plaintiff is the owner by assignment of the entire right, title, and interest, including the right to sue for past infringement, of United States Trademark Registration No. 4,730,102 on the Principal Register, as of May 5, 2015, for the mark JACKSONVILLE ARMADA for "clothing,

namely, tops, shirts, tee shirts, polo shirts, long-sleeved shirts, jerseys, sports jerseys, pullovers, long-sleeve pullovers, hooded pullovers, hooded sweatshirts, fleece tops, fleece pullovers, bottoms, pants, athletic pants, fleece pants, jackets, rain jackets; headwear; footwear; all the foregoing relating to soccer and promoting an affiliation with a professional soccer team and not relating to skiing." Said registration is based on an application filed in the PTO on February 17, 2014 and claims a date of first use in commerce on October 31, 2014. Thus, the dates of registration, first use in commerce, and application of Plaintiff's mark are all prior to Defendant's filing date and alleged first use date of its FULL SAIL ARMADA and ARMADA marks. A true and accurate copy of the registration is attached hereto as Exhibit "2" and incorporated by reference.

10.    Plaintiff is the owner by assignment of the entire right, title, and interest, including the right to sue for past infringement, of United States Trademark Registration No. 4,745,242 on the Principal Register, as of May 26, 2015, for the logo shown below



for "organizing sporting events, namely soccer matches, competition, and exhibitions; entertainment services namely participation in professional soccer games and exhibitions; production of videos featuring soccer matches, competitions, and exhibitions; providing a website featuring non-downloadable videos featuring soccer matches, competitions and exhibitions the

internet; providing a website featuring information about soccer and soccer matches, competitions, and exhibitions; conducting soccer training camps and clinics; ticket reservation and booking services for entertainment, sporting and cultural events; entertainment services, namely personal appearances by players involved with soccer games and league competition." Said registration is based on an application filed in the PTO on February 17, 2014 and claims a date of first use in commerce on February 7, 2015. Thus, the dates of registration, first use in commerce, and application of Plaintiff's mark are all prior to Defendant's filing date and alleged first use date of its FULL SAIL ARMADA and ARMADA marks. A true and accurate copy of the registration is attached hereto as Exhibit "3" and incorporated by reference.

11.     Plaintiff is the owner by assignment of the entire right, title, and interest, including the right to sue for past infringement, of United States Trademark Registration No. 4,730,103 on the Principal Register, as of May 5, 2015 for the logo shown below



for "clothing, namely, tops, shirts, tee shirts, polo shirts, long-sleeved shirts, jerseys, sports jerseys, pullovers, long-sleeve pullovers, hooded pullovers, hooded sweatshirts, fleece tops, fleece pullovers, bottoms, pants, athletic pants, fleece pants, jackets, rain jackets; headwear; footwear; all the foregoing relating to soccer and promoting an affiliation with a professional soccer team and not relating to skiing." Said registration is based on an application filed in the PTO on February 17, 2014 and claims a date of first use in commerce on October 31, 2014. Thus, the dates of

registration, first use in commerce, and application of Plaintiff's mark are all prior to Defendant's filing date and alleged first use date of its FULL SAIL ARMADA and ARMADA marks. A true and accurate copy of the registration is attached hereto as Exhibit "4" and incorporated by reference.

12.      Plaintiff has common law rights in the mark "ARMADA" based on its substantially exclusive and continuous use in commerce for "organizing sporting events, namely soccer matches, competition, and exhibitions; entertainment services namely participation in professional soccer games and exhibitions; production of videos featuring soccer matches, competitions, and exhibitions; providing a website featuring non-downloadable videos featuring soccer matches, competitions and exhibitions the internet; providing a website featuring information about soccer and soccer matches, competitions, and exhibitions; conducting soccer training camps and clinics; ticket reservation and booking services for entertainment, sporting and cultural events; entertainment services, namely personal appearances by players involved with soccer games and league competition" in Class 041. Plaintiff recently filed an application for registration of the mark with the PTO on May 2, 2019 claiming a date of first use in commerce as February 07, 2015. Thus, the first use in commerce date of Plaintiff's mark is prior to Defendant's first use dates of its FULL SAIL ARMADA and ARMADA marks. A true and accurate copy of said application is attached hereto as Exhibit "5" and incorporated by reference.

13.      Plaintiff also has common law rights in the mark "ARMADA" based on its substantially exclusive and continuous use in commerce for "organizing e-sports events and competitions" in Class 041. Plaintiff has recently filed an application for registration of the mark with the PTO, declaring a first use in commerce as of March 24, 2018. Thus, Plaintiff's first use

in commerce predates Defendant's claimed date of first use of its ARMADA mark. A true and accurate copy of the application is attached hereto as Exhibit "6" and incorporated by reference.

## FACTUAL BACKGROUND

14.     Plaintiff has used its JACKSONVILLE ARMADA, JACKSONVILLE ARMADA FOOTBALL CLUB, and ARMADA marks (hereinafter "the Marks") to promote its Jacksonville Armada soccer team that has played all over the country, including in Orlando, since at least as early as 2014. Plaintiff has additionally advertised its services under the Marks on network television channels such as NBC and the CW network and has a presence in the soccer and sports arena throughout the entire United States.

15.     Plaintiff and its predecessor in interest have expended significant sums of money to promote and advertise its business under the JACKSONVILLE ARMADA, JACKSONVILLE ARMADA FOOTBALL CLUB and ARMADA marks from at least 2014 until the present.

16.     Additionally, Plaintiff has actively organized, promoted, and advertised electronic sports also known as "e-sports" events, competitions, and exhibitions under its ARMADA mark since at least March 24, 2018, more than eight (8) months before Defendant first used its FULL SAIL ARMADA and ARMADA marks in association with "providing a web site that provides electronic sports gaming league management; administration and coordination of recreational opportunities for individuals who wish to participate in team leagues in the field of electronic sports and video games; administration, management and promotion of recreational collegiate electronic sports leagues and video game leagues; and organizing, conducting, producing and hosting video game and electronic sports exhibitions and events" in Class 035.

17.     More specifically, Plaintiff has successfully held two electronic sporting events at its Jacksonville team shop located in the stadium under the mark ARMADA on March 24, 2018 and December 29, 2018 and intends to continue holding such events in the future. See Exhibit "7" showing website screenshots promoting e-sport events at Plaintiff's Jacksonville Armada store.

18.     In fact, Plaintiff will be hosting another e-sports competition at its facility in October of November of 2019.

19.     Plaintiff is also in early negotiations to sign an e-sports player and intends on offering the winner of its Summer 2020 e-sports competition a contract with Jacksonville Armada to compete in e-sports competitions throughout the country on behalf of Plaintiff.

### *Defendant's Infringing Activities*

20.     Defendant administers, coordinates, manages, and promotes e-sports and video game leagues and organizes, conducts, produces, and hosts e-sports and video game events and exhibitions, which include e-sports and video games in the field of soccer.

21.     Defendant filed trademark applications for FULL SAIL ARMADA and ARMADA for its e-sports leagues and video game and e-sports exhibitions and events citing a first use date of December 2018.   True and correct copies of the FULL SAIL ARMADA and ARMADA trademark applications are attached hereto as Exhibits "8" and "9" respectively.

22.     Defendant and Plaintiff deliver highly related services in that both parties organize, advertise, promote, and manage electronic sporting events in the same geographic area and thus are direct competitors.

23.     After becoming aware of Defendant's use of FULL SAIL ARMADA and ARMADA in connection with organizing, advertising, promoting, and hosting video game and electronic sports exhibitions and events, Plaintiff, through legal counsel, requested Defendant stop

using the FULL SAIL ARMADA and ARMADA marks because Defendant's use was likely to cause confusion with Plaintiff's prior use and registration of JACKSONVILLE ARMADA and JACKSONVILLE ARMADA FOOTBALL CLUB and Plaintiff's use of ARMADA for sports-related goods and services, including electronic sporting events. A true and correct copy of the cease and desist letter is attached hereto as Exhibit "10".

24.    Plaintiff also filed a Letter of Protest at the PTO against Defendant's ARMADA mark, which was accepted by the PTO and which resulted in a second Office Action refusing Defendant's ARMADA trademark application in light of Plaintiff's trademark registrations for JACKSONVILLE ARMADA FOOTBALL CLUB and JACKSONVILLE ARMADA. True and correct copies of the correspondence from the PTO accepting the Letter of Protest and the Office Action refusing Defendant's mark are attached hereto as Exhibits "11" and "12".

25.    Defendant, with full knowledge of Plaintiff's Marks, has repeatedly refused Plaintiff's requests to stop using Plaintiff's "ARMADA" mark, thereby making the use and continued use of Plaintiff's Marks deliberate, willful, and wanton.

26.    As shown on Defendant's website and social media platforms, Defendant predominantly uses the ARMADA mark to promote its services such that the commercial impression is that Defendant is offering its e-sports services under the name ARMADA. True and correct printouts from Defendant's website and Defendant's Facebook page are attached hereto as Exhibits "13" and "14".

27.    As shown on Plaintiff's website and social media platforms, Plaintiff's predominant use of its mark is also of ARMADA such that commercial impression is that Plaintiff is offering it e-sports services under the name ARMADA. True and correct printouts from

Plaintiff's Facebook page are attached hereto as Exhibit "15."   *See* Plaintiff's website at Exhibit "7" above.

28.     It is very common in the industry for professional sports teams, including, soccer teams, to sponsor e-sports players and leagues such that consumers will be confused and think that FULL SAIL ARMADA/ARMADA is somehow approved, endorsed or sponsored by JACKSONVILLE ARMADA/ARMADA.

29.     Plaintiff has never authorized or licensed Defendant to use the Marks nor any confusingly similar derivative of them.

30.     Plaintiff performed all condition precedents to be performed by Plaintiff or the conditions have occurred.

31.     Plaintiff has been forced to retain the undersigned law firm for representations in this action.

## COUNT I
### (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)
### (REGISTRATION NO. 4,745,243)

32.     Plaintiff realleges each and every allegation set forth in paragraphs 1 through 31 above, as if fully set forth herein.

33.     Plaintiff is the owner of the entire rights, title, and interest in U.S. Trademark No. 4,745,243 for JACKSONVILLE ARMADA in Class 041 for services including, but not limited to, organizing sporting events, namely, soccer matches, competitions and exhibitions and production of videos featuring soccer matches, competitions and exhibitions. *See* Exhibit "1".

34.     Defendant has used the marks FULL SAIL ARMADA and ARMADA in connection with the promotion, advertising, organization, and management of electronic sporting events and exhibitions. *See* Exhibits "13" and "14".

35.     Defendant's use in commerce of the FULL SAIL ARMADA and ARMADA marks is sufficiently close in sound and appearance to Plaintiff's JACKSONVILLE ARMADA mark such that there is a likelihood of confusion among consumers.

36.     In fact, Plaintiff's letter of protest, filed against Defendant's application to register the marks FULL SAIL ARMADA and ARMADA on the ground of likelihood of confusion, was accepted by the PTO. *See* Exhibit "11".

37.     Moreover, the PTO recently issued an Office Action, refusing Defendant's application or registration of the mark ARMADA based on a likelihood of confusion with Plaintiff's federally registered marks JACKSONVILLE ARMADA and JACKSONVILLE ARMADA FOOTBALL CLUB due to both the similarity between the marks and the highly related nature of Plaintiff's and Defendant's services. *See* Exhibit "12".

38.     Defendant adopted the FULL SAIL ARMADA and ARMADA marks, based upon information and belief, with knowledge of Plaintiff's prior use of the JACKSONVILLE ARMADA mark and has thereby infringed Plaintiff's mark willfully and with wanton disregard of Plaintiff's rights and will continue to do so unless enjoined.

39.     Defendant has created a likelihood of confusion in the marketplace that will continue and increase if Defendant is permitted to continue its unauthorized use and misappropriation of Plaintiff's Marks.

40.     Once Defendant's infringing conduct was brought to its attention by Plaintiff, Defendant refused to stop using the FULL SAIL ARMADA and ARMADA marks and made a deliberate decision to continue using the marks to advertise, promote, organize, and manage electronic sporting events and exhibitions.

41.     As a direct and proximate result of Defendant's infringing use of the FULL SAIL

ARMADA and ARMADA marks, Defendant has caused Plaintiff to lose profits, and to lose

goodwill associated with its Marks.

42.     Plaintiff will be irreparably damaged by continued loss of profits, loss of

goodwill and loss of control over the reputation of its Marks unless Defendant is prevented from

continuing to promote, advertise, sell or offering for sale its services associated with the

intentionally and confusingly similar FULL SAIL ARMADA and ARMADA marks.

**COUNT II**
**(TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)**
**(REGISTRATION NO. 4,730,102)**

43.     Plaintiff realleges each and every allegation set forth in paragraphs 1 through 31

above, as if fully set forth herein.

44.     Plaintiff is the owner of the entire rights, title, and interest in U.S. Trademark No.

4,730,102 for JACKSONVILLE ARMADA in Class 025 for various items of clothing all related

to soccer and promoting an affiliation with a professional soccer team.  *See* Exhibit "2".

45.     Defendant has used the marks FULL SAIL ARMADA and ARMADA in

connection with the promotion, advertising, organization, and management of electronic sporting

events and exhibitions and has also offered for sale, sold and/or provided clothing with the FULL

SAIL ARMADA and ARMADA marks on them as shown in Exhibit "16" attached hereto.

46.     Defendant's use in commerce of the FULL SAIL ARMADA and ARMADA marks

is sufficiently close in sound and appearance to Plaintiff's JACKSONVILLE ARMADA mark

such that there  is a likelihood of confusion among consumers.

47.     In fact, Plaintiff's letter of protest, filed against Defendant's application to register the marks FULL SAIL ARMADA and ARMADA on the ground of likelihood of confusion, was accepted by the PTO. *See* Exhibit "11".

48.     Moreover, the PTO recently issued an Office Action, refusing Defendant's application or registration of the mark ARMADA based on a likelihood of confusion with Plaintiff's federally registered marks JACKSONVILLE ARMADA and JACKSONVILLE ARMADA FOOTBALL CLUB due to both the similarity between the marks and the highly related nature of Plaintiff's and Defendant's services. *See* Exhibit "12".

49.     Defendant adopted the FULL SAIL ARMADA and ARMADA marks, based upon information and belief, with knowledge of Plaintiff's prior use of the JACKSONVILLE ARMADA mark and has thereby infringed Plaintiff's mark willfully and with wanton disregard of Plaintiff's rights and will continue to do so unless enjoined.

50.     Defendant has created a likelihood of confusion in the marketplace that will continue and increase if Defendant is permitted to continue its unauthorized use and misappropriation of Plaintiff's Marks.

51.     Once Defendant's infringing conduct was brought to its attention by Plaintiff, Defendant refused to stop using the FULL SAIL ARMADA and ARMADA marks and made a deliberate decision to continue using the marks to advertise, promote, organize, and manage electronic sporting events and exhibitions as well as on various forms of clothing.

52.     As a direct and proximate result of Defendant's infringing use of the FULL SAIL ARMADA and ARMADA marks, Defendant has caused Plaintiff to lose profits, and to lose goodwill associated with its Marks.

53.     Plaintiff will be irreparably damaged by continued loss of profits, loss of goodwill and loss of control over the reputation of its Marks unless Defendant is prevented from continuing to promote, advertise, sell or offering for sale its services associated with the intentionally and confusingly similar FULL SAIL ARMADA and ARMADA marks.

## COUNT III
## (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)
## (REGISTRATION NO. 4,745,242)

54.     Plaintiff realleges each and every allegation set forth in paragraphs 1 through 31 above, as if fully set forth herein.

55.     Plaintiff is the owner of the entire rights, title, and interest in U.S. Trademark No. 4,745,242 for the JACKSONVILLE ARMADA FOOTBALL CLUB logo in Class 041 for services including, but not limited to, organizing sporting events, namely, soccer matches, competitions and exhibitions and production of videos featuring soccer matches, competitions and exhibitions. *See* Exhibit "3".

56.     Defendant has used the marks FULL SAIL ARMADA and ARMADA in connection with the promotion, advertising, organization, and management of electronic sporting events and exhibitions. *See* Exhibits "13" and "14".

57.     Defendant's use in commerce of the FULL SAIL ARMADA and ARMADA marks is sufficiently close in sound and appearance to Plaintiff's JACKSONVILLE ARMADA mark such that there is a likelihood of confusion among consumers.

58.     In fact, Plaintiff's letter of protest, filed against Defendant's application to register the marks FULL SAIL ARMADA and ARMADA on the ground of likelihood of confusion, was accepted by the PTO. *See* Exhibit "11".

59.     Moreover, the PTO recently issued an Office Action, refusing Defendant's application or registration of the mark ARMADA based on a likelihood of confusion with Plaintiff's federally registered marks JACKSONVILLE ARMADA and JACKSONVILLE ARMADA FOOTBALL CLUB due to both the similarity between the marks and the highly related nature of Plaintiff's and Defendant's services. *See* Exhibit "12".

60.     Defendant adopted the FULL SAIL ARMADA and ARMADA marks, based upon information and belief, with knowledge of Plaintiff's prior use of the JACKSONVILLE ARMADA mark and has thereby infringed Plaintiff's mark willfully and with wanton disregard of Plaintiff's rights and will continue to do so unless enjoined.

61.     Defendant has created a likelihood of confusion in the marketplace that will continue and increase if Defendant is permitted to continue its unauthorized use and misappropriation of Plaintiff's Marks.

62.     Once Defendant's infringing conduct was brought to its attention by Plaintiff, Defendant refused to stop using the FULL SAIL ARMADA and ARMADA marks and made a deliberate decision to continue using the marks to advertise, promote, organize, and manage electronic sporting events and exhibitions as well as on various forms of clothing.

63.     As a direct and proximate result of Defendant's infringing use of the FULL SAIL ARMADA and ARMADA marks, Defendant has caused Plaintiff to lose profits, and to lose goodwill associated with its Marks.

64.     Plaintiff will be irreparably damaged by continued loss of profits, loss of goodwill and loss of control over the reputation of its Marks unless Defendant is prevented from continuing to promote, advertise, sell or offering for sale its services associated with the intentionally and confusingly similar FULL SAIL ARMADA and ARMADA marks.

**COUNT IV**
**(TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)**
**(REGISTRATION NO. 4,730,103)**

65.     Plaintiff realleges each and every allegation set forth in paragraphs 1 through 31 above, as if fully set forth herein.

66.     Plaintiff is the owner of the entire rights, title, and interest in U.S. Trademark No. 4,730,103 for the JACKSONVILLE ARMADA FOOTBALL CLUB logo in Class 025 for various items of clothing all related to soccer and promoting an affiliation with a professional soccer team. *See* Exhibit "4".

67.     Defendant has used the marks FULL SAIL ARMADA and ARMADA in connection with the promotion, advertising, organization, and management of electronic sporting events and exhibitions and has also offered for sale, sold and/or provided clothing with the FULL SAIL ARMADA and ARMADA marks on them as shown in Exhibit "16" attached hereto.

68.     Defendant's use in commerce of the FULL SAIL ARMADA and ARMADA marks is sufficiently close in sound and appearance to Plaintiff's JACKSONVILLE ARMADA mark such that there is a likelihood of confusion among consumers.

69.     In fact, Plaintiff's letter of protest, filed against Defendant's application to register the marks FULL SAIL ARMADA and ARMADA on the ground of likelihood of confusion, was accepted by the PTO. *See* Exhibit "11".

70.     Moreover, the PTO recently issued an Office Action, refusing Defendant's application or registration of the mark ARMADA based on a likelihood of confusion with Plaintiff's federally registered marks JACKSONVILLE ARMADA and JACKSONVILLE ARMADA FOOTBALL CLUB due to both the similarity between the marks and the highly related nature of Plaintiff's and Defendant's services. *See* Exhibit "12".

71.     Defendant adopted the FULL SAIL ARMADA and ARMADA marks, based upon information and belief, with knowledge of Plaintiff's prior use of the JACKSONVILLE ARMADA mark and has thereby infringed Plaintiff's mark willfully and with wanton disregard of Plaintiff's rights and will continue to do so unless enjoined.

72.     Defendant has created a likelihood of confusion in the marketplace that will continue and increase if Defendant is permitted to continue its unauthorized use and misappropriation of Plaintiff's Marks.

73.     Once Defendant's infringing conduct was brought to its attention by Plaintiff, Defendant refused to stop using the FULL SAIL ARMADA and ARMADA marks and made a deliberate decision to continue using the marks to advertise, promote, organize, and manage electronic sporting events and exhibitions as well as on various forms of clothing.

74.     As a direct and proximate result of Defendant's infringing use of the FULL SAIL ARMADA and ARMADA marks, Defendant has caused Plaintiff to lose profits, and to lose goodwill associated with its Marks.

75.     Plaintiff will be irreparably damaged by continued loss of profits, loss of goodwill and loss of control over the reputation of its Marks unless Defendant is prevented from continuing to promote, advertise, sell or offering for sale its services associated with the intentionally and confusingly similar FULL SAIL ARMADA and ARMADA marks.

## COUNT V
### (TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)) (ARMADA)

76.     Plaintiff realleges each and every allegation set forth in paragraphs 1 through 31 above, as if fully set forth herein.

77.     Defendant adopted the FULL SAIL ARMADA and ARMADA marks to advertise, promote, organize, and manage its electronic sporting events, competitions, and exhibitions. *See* Exhibits "13" and "14".

78.     Plaintiff has used its \ARMADA marks for sports related goods and services since at least as early as 2015, predating the Defendant's use of the FULL SAIL ARMADA and ARMADA marks.

79.     Plaintiff has used its ARMADA mark in interstate commerce to advertise, promote, organize, and manage electronic sporting events, competitions, and exhibitions since at least as early as March 2018, predating Defendant's first use of the mark ARMADA in commerce.

80.     Plaintiff's use of its Marks in interstate commerce predates Defendant's adoption and use of the FULL SAIL ARMADA and ARMADA marks.

81.     Defendant's unauthorized use of Plaintiff's Marks is likely to cause confusion, mistake, or to deceive customers as to Plaintiff's affiliation, connection, association, sponsorship, or approval of Defendant's services.

82.     Once Defendant's infringing conduct was brought to its attention, Defendant refused to stop using the FULL SAIL ARMADA and ARMADA marks and made a deliberate decision to continue using the infringing marks to advertise, promote, manage, and organize electronic sporting events and exhibitions.

83.     Defendant's use and continued use of Plaintiff's Marks is willful, wanton, and shows a reckless disregard for Plaintiff's rights.

84.     Plaintiff has been damaged and is likely to be further damaged by Defendant's infringing acts and that damage will be irreparable unless Defendant's conduct is enjoined.

## COUNT VI
### (COMMON LAW TRADEMARK INFRINGEMENT
### UNDER FLORIDA LAW)

85.     Plaintiff realleges each and every allegation set forth in paragraphs 1 through 31 above, as if fully set forth herein.

86.     Plaintiff has invested a substantial amount of time, effort, and money in its Marks throughout the United States. In addition to the national protection afforded to Plaintiff by its federal registrations, Plaintiff has extensive, non-registered statutory and common law rights under Florida law in its JACKSONVILLE ARMADA and JACKSONVILLE ARMADA FOOTBALL CLUB marks.

87.     As it pertains to Plaintiff's ARMADA mark, Plaintiff's consistent, exclusive, and public use of the mark in relation to electronic sporting events, competitions, and exhibitions establishes Plaintiff's common law and statutory rights in the mark within the state of Florida.

88.     Further, Plaintiff's common law rights in its JACKSONVILLE ARMADA, JACKSONVILLE ARMADA FOOTBALL CLUB and ARMADA marks predate the filing date and the alleged first use date of Defendant's FULL SAIL ARMADA and ARMADA marks; and, Plaintiff's common law rights in its ARMADA mark related to e-sports predates the Defendant 's alleged first use of its ARMADA mark.

89.     Defendant's conduct as described above constitutes trademark infringement in violation of the common law of the State of Florida.

90.     Plaintiff does not have an adequate remedy at law and will continue to be damaged by Defendant's actions unless this Court enjoins Defendant from such business practices.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, requests judgment against the Defendant as follows:

1.      That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and has committed common law trademark infringement under Florida law;

2.      Granting a permanent injunction enjoining the Defendants, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   a.      distributing, providing, selling, marketing, advertising, promoting, organizing, or authorizing any third party to manufacture, distribute, sell, market, advertise, organize or promote Defendant's goods and services bearing the mark FULL SAIL ARMADA or ARMADA or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Marks;

   b.      engaging in any activity that infringes Plaintiff's rights in its Marks, including but not limited to using any mark that is confusingly similar thereto, to advertise, promote, organize or manage e-sport events, exhibitions, or competitions, or to organize or promote sports-related services;

   c.      engaging in any activity constituting unfair competition with Plaintiff;

   d.      making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's goods and services are in any manner approved, endorsed, licensed, sponsored,

authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant's;

e.   using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

f.   registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark "ARMADA" or any other mark that infringes or is likely to be confused with Plaintiff's Marks, or any goods or services of Plaintiff, or Plaintiff as their source; and

g.   aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

3.   Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods and services.

4.      Directing that Defendant account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

5.      Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

6.      Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

7.      Awarding such other and further relief as the Court deems just and proper.


## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues triable.

DATED this 2nd day of October 2019.

Respectfully Submitted,

BEUSSE WOLTER SANKS & MAIRE, PLLC
390 N. Orange Avenue, Suite 2500
Orlando, FL  32801
Telephone:     (407) 926-7700
Facsimile:     (407) 926-7720
Email:  adavis@bwsmiplaw.com
Email:  kwimberly@bwsmiplaw.com


Amber N. Davis
Florida Bar No. 0026628
Kevin W. Wimberly
Florida Bar. No. 57977

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of October, 2019, I electronically filed the foregoing document with the Clerk of Court utilizing the CM ECF system and a copy has been served by email to: Greg W. Herbert, Esq. (herbertg@gtlaw.com), 450 South Orange Avenue, Suite 650, Orlando, FL 32801.

/s/ Amber N. Davis
Attorney